UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 1:12-cr-101 |
| v. | ) | |
| | ) | *Collier / Lee* |
| | ) | |
| TERRANCE McCULLOUGH | ) | |

## REPORT AND RECOMMENDATION

Before the Court is a motion to suppress filed by Defendant Terrance McCullough ("Defendant") seeking to suppress all evidence resulting from a traffic stop on February 28, 2012. [Doc. 45].[1] Defendant argues the police did not have probable cause to arrest him during the stop. After considering the evidence and arguments, I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

**I.    FACTS**

The one-count Indictment charges Defendant with possession with intent to distribute 28 grams or more of crack cocaine [Doc. 1]. At the hearing, the Government offered the testimony of Chattanooga Police Department ("CPD") Officer Cristina Henderson ("Henderson"). Defendant offered no testimony. Henderson testified as follows.

---

[1] Previously, Defendant filed a motion to suppress all evidence resulting from the traffic stop claiming there was no probable cause to justify the stop and alleging he was unlawfully stopped due to racial profiling [Doc. 13]. Prior to the scheduled hearing on the first motion to suppress, Defendant moved to strike the motion and the motion to suppress was stricken [Doc. 20 & 21]. Subsequently, Defendant entered a plea agreement [Doc. 33], but the change of plea hearing was cancelled when Defendant reconsidered changing his plea [Doc. 40]. By standing order, the current motion to suppress was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b). After the government filed a brief in opposition to the motion to suppress [Doc. 50], an evidentiary hearing was held on August 20, 2013. At the parties' request, post-hearing submissions were allowed in lieu of argument at the hearing. The post-hearing submission of each party [Docs. 52 & 53] has been fully considered.

Henderson is a patrol officer with five years of experience. On February 28, 2012, Officer Henderson initiated a traffic stop of a vehicle for illegally turning "right on red" and for a window tint violation. When she turned on her patrol car blue lights, the car, which was in the left hand lane of two lanes, did not move immediately to the right hand lane as typically happens in a traffic stop. When the car did move into the right hand lane, Officer Henderson saw a "big white bag" thrown from the front passenger window. The car then made two turns into the lot of a nearby gas station and stopped facing the discarded bag. The above described behavior and the tinted windows, which were dark enough to prevent Henderson from seeing the occupants of the vehicle, caused Henderson to be cautious about her approach to the stopped vehicle so she called for backup. Instead of approaching the vehicle without backup, she called for the driver of the vehicle to step back to her patrol car. While she waited for backup, she spoke with the driver near her patrol car about insurance and also learned that there was only one passenger in the stopped car. Henderson did not mention the bag because she did not want him to know that she saw it thrown from the window.

Officer Sara Fuller ("Fuller") was the first backup officer to arrive and, after securing the driver, Fuller and Henderson approached the passenger side of the vehicle. Henderson waited for backup to arrive before approaching the stopped car due to her safety concerns. Henderson opened the door and asked Defendant, who was seated in the front passenger seat, to step out of the car. In response, Defendant stepped out of the car and, as soon as he stepped out, he reached toward the front of his shirt near the waistband saying, "I got some right here." Henderson did not know what Defendant meant, but fearful that Defendant had a gun and concerned for her own safety, Henderson immediately handcuffed Defendant and began a patdown of his person. She patted the outside of Defendant's shirt where he reached first and felt a big bulge. She pulled out the "bulge," which she

2

immediately recognized was suspected marijuana in a baggie. She then read Defendant his Miranda rights from a card she carries. Although it is not stated in Henderson's report of the incident/affidavit of complaint (the "report"),[2] Defendant responded something to the effect of "just take me to jail." Henderson denied she placed Defendant under arrest at this point. She explained that she had not completed her investigation, and she read Defendant his rights even though he was not yet placed under arrest because it is her habit to give the Miranda warning before asking any questions of a detained suspect. Henderson testified she could have arrested Defendant after finding the marijuana, but she did not do so in this case. After giving the Miranda warning, Henderson completed her patdown and found $363 in Defendant's pocket.

After finding the money, Henderson investigated the bag thrown from the front passenger window and found it contained suspected crack cocaine. She asked Defendant if the bag was his, and he replied, "You saw it come out of my window, just take me to jail." The driver of the car consented to a search of the car; digital scales and baggies were found on the front passenger-side floorboard. Henderson testified she arrested Defendant on charges related to marijuana and crack cocaine possession for resale, not for littering.

During the stop, additional backup arrived, and eventually some four or five patrol cars and six officers arrived on the scene and helped with various aspects of the investigation. En route to the jail, Defendant said, "You better hope I don't get a bond because if I do, they ain't never gonna find me and they ain't never gonna find you either."

During her cross examination, Henderson was questioned extensively about her report. In the report, Henderson does not mention that Defendant made a movement with his hands toward his

---

[2] The report, Defendant's Exhibit 1, is the sole exhibit introduced at the hearing.

3

waistband when he said "I got some right here" or that Defendant said "just take me to jail" in response to being read his Miranda rights. The report states the following order of events: "[Defendant] was asked to step out of the vehicle, when he did he stated 'I got some here'. Police placed him in custody, verbally Mirandized him and searched his person, finding a clear plastic baggy containing suspect marijuana and $363.00 cash although he is currently unemployed and has no verifiable income."

## II.     ANALYSIS

There are three types of constitutionally permissible warrantless encounters between police and citizens: "(1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop which must be predicated upon reasonable suspicion; and (3) arrests which must be based upon probable cause." *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009) (quoting *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) and referring to *Terry v. Ohio*, 392 U.S. 1 (1968)). The issue raised by Defendant implicates mainly the third type of encounter as the government does not contend the encounter was consensual, and Defendant expressly stated he is not challenging the traffic stop and is only challenging what he contends was an arrest without probable cause.

Although the proponent of a motion to suppress generally bears the burden of establishing his Fourth Amendment rights were violated by a challenged search or seizure, *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978), it is the government's burden to demonstrate by a preponderance of the evidence that a particular seizure was based on probable cause. *United States v. Pena*, 961 F.2d 333, 338-39 (2d Cir. 1992); *see United States v. Baldwin*, 114 F. App'x 675, 681 (6th Cir. 2004). A

4

Case 1:12-cr-00101-CLC-SKL   Document 54   Filed 09/04/13   Page 4 of 12   PageID #: 221

warrantless arrest is lawful if the officer has probable cause to believe the suspect either is, has, or is about to commit a crime. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). In the absence of probable cause, an arrest constitutes an unreasonable seizure in violation of the Fourth Amendment. *Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999). Any inculpatory statements resulting from an illegal arrest in violation of the Fourth Amendment are analyzed under the "fruit of the poisonous tree" doctrine. *Brown v. Illinois*, 422 U.S. 590, 602-04 (1975).

Probable cause exists if there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *DeFillippo*, 443 U.S. at 37; *see also McCurdy v. Montgomery County*, 240 F.3d 512, 517 (6th Cir. 2001). "[T]he existence of probable cause should be determined on the totality of the circumstances. This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (citations omitted). "Moreover, the objective reasonableness of the facts relevant to a probable cause determination is paramount, and the officer's subjective intentions are irrelevant." *McCurdy*, 240 F.3d at 517. "This inquiry requires a court to examine the events leading up to the arrest and then to decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amounted to probable cause.'" *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

### A. The Investigatory Detention/Arrest

Defendant argues he was unlawfully arrested at the moment he was read his Miranda rights while in handcuffs, all of which was prior to Henderson's observation of the marijuana in his

5

waistband. Defendant contends his arrest at the time he was read his Miranda rights was not based on probable cause because at the time he was first placed under arrest, all Henderson suspected was that Defendant had littered, which the parties agree is not an arrestable violation of Tennessee law.

It is understandable why Defendant makes this argument based on the sequence of events laid out in Henderson's report (i.e., the "[p]olice placed him in custody, verbally Mirandized him and searched his person, finding a clear plastic baggy containing suspect Marijuana and $363.00"). This same sequence of events is presented in the government's opening brief (i.e., Henderson "detained him and read him his Miranda rights . . . then searched the defendant and found marijuana.") [Doc. 50 at Page ID # 105]. Defendant's argument, however, fails because Henderson credibly testified that she properly found the marijuana in Defendant's waistband during her patdown. While there are some inconsistencies between Henderson's testimony and her report, and more detail in her testimony than in her report, I **FIND** the inconsistencies and lack of greater detail do not indicate Henderson fabricated her testimony in any way. To the contrary, Henderson credibly testified she planned to arrest Defendant after she found the marijuana in her patdown for weapons.

Without a doubt, Defendant was properly seized in a *Terry* or investigatory detention as a result of the traffic stop a stop he does not contest. "There is no bright-line test for determining when an investigatory stop crosses the line and becomes an arrest." *United States v. Williams*, 170 F. App'x 399, 402 (6th Cir. 2006) (citing *e.g., United States v. Lopez-Arias*, 344 F.3d 623, 627-28 (6th Cir.2003)). The analysis of when that line is crossed is a fact-sensitive inquiry, depending on the totality of the circumstances. *Williams*, 170 F. App'x at 403 (citing *Lopez-Arias*, 344 F.3d at 627-28). As held in *Williams*,

> A court is to consider a variety of factors: (1) transportation of the

> detainee to another location; (2) significant restraints on freedom of movement involving physical confinement or other coercion; (3) use of weapons or bodily force; and (4) issuance of Miranda warnings. *See id.* (citing *United States v. Richardson*, 949 F.2d 851, 857 (6th Cir.1991)); *United States v. Montgomery*, 377 F.3d 582, 588 (holding that the reading of Miranda warnings is evidence of an arrest). No single factor is dispositive.

*Id.*[3]

Although the parties did not specifically address all of the factors, it appears the first and third factors disfavor a finding of arrest, and the second and fourth factors favor a finding of arrest at the time the Miranda warning was given. However, even assuming the line from a *Terry* stop to an arrest was crossed upon recitation of the Miranda warning (in spite of Henderson's contrary intent), suppression is not appropriate because Henderson had already found the marijuana in Defendant's waistband during the patdown. Observation of an individual with suspected narcotics is probable cause to arrest the individual. *See, e.g., United States v. Thomas*, 138 F. App'x. 759, 761 62 (6th Cir. 2005) (police officer had probable cause to arrest a suspect when he observed the suspect in possession of a rock-like substance that appeared to be crack cocaine); *United States v. Marxen*, 410 F.3d 326, 332 (6th Cir. 2005) (police officers had probable cause to arrest a suspect after observing suspected marijuana and drug paraphernalia in his vehicle during a lawful stop).

### B. The Patdown

As the marijuana was found during the process of a patdown, it is proper to consider whether the patdown violated the Fourth Amendment. While Defendant framed his argument only to raise

---

[3] In addition, a custodial arrest does not necessarily have to take place before a legitimate search incident to arrest. "A warrantless search that precedes an arrest may be constitutionally valid as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed 'quickly on the heels [ ] of the challenged search.'" *Williams*, 170 F. App'x at 404 (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) and *Montgomery*, 377 F.3d at 586).

that he and the car were searched incident to an illegal arrest for littering, Defendant may also be questioning whether Henderson had a valid safety concern to justify handcuffing Defendant and conducting a patdown. No other arguments have been raised about the patdown.

Because Defendant was a passenger in a vehicle that was lawfully stopped, Henderson could properly order him to exit the vehicle as a matter of course during the traffic stop. *See Montgomery*, 377 F.3d at 585-86 (stating troopers were clearly justified in ordering passenger out of vehicle pursuant to routine traffic stop). During an investigative detention, such as a traffic stop, the police may conduct a protective "frisk" or "patdown" for weapons if a reasonable, articulable suspicion exists that the suspect may be armed or that the officer's or another's safety may somehow be jeopardized. *Terry*, 392 U.S. at 27. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (citation omitted). *See also Adams v. Williams*, 407 U.S. 143, 146 (1972) (an officer "may conduct a limited protective search for concealed weapons" when he "is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others") (internal quotation marks and citation omitted). The officer need not be certain a suspect is armed. The issue is whether a prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger. Thus, "[t]he general test . . . is whether 'the surrounding circumstances give rise to a justifiable fear for personal safety.'" *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993) (quoting *United States v. Hardnett*, 804 F.2d 353, 357 (6th Cir. 1986)).

When the circumstances of an investigatory detention reveal that the officer's safety is at risk, the law permits a greater intrusion into the detainee's personal freedom as a part of an investigatory

8

detention. *See Hardnett*, 804 F.2d at 357. Specifically, handcuffing a suspect does not "exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution." *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999) (upholding handcuffing of suspects believed involved in a shooting); *see also United States v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007) (determining that officer's handcuffing of defendant during investigatory detention was appropriate as a "safety precaution" when officers were investigating tip of methamphetamine laboratory and defendant was nervous and evasive); *United States v. Heath*, 259 F.3d 522, 530 (6th Cir. 2001) (approving handcuffing of the defendant at the inception of a *Terry* stop when the officers reasonably suspected defendant was carrying drugs and believed he might be armed due to their experience with drug traffickers); *United States v. Hurst*, 228 F.3d 751, 758 n.3 (6th Cir. 2000) (noting that "under the circumstances, where defendant was reasonably suspected of having just burglarized a home and might reasonably have been deemed armed and dangerous, the officers' attempt to use handcuffs as a precautionary measure to secure their safety was not unreasonable or otherwise improper").

Although each of the above cases turn on their individual facts, in each of them, the officer or officers had reason to believe the person being handcuffed posed a danger to the officer. The Supreme Court has repeatedly recognized traffic stops are "especially fraught with danger to police officers," and that a driver "may be patted down for weapons if the officer reasonably concludes the driver might be armed and dangerous." *E.g., Arizona v. Johnson*, 555 U.S. 323, 324 (2009) (citations omitted). Here, Henderson was justified in handcuffing Defendant and conducting a patdown after Defendant indicated he "got some" in his waistband, based on a reasonable belief that Defendant might be armed and dangerous. Henderson had even more grounds to support her

9

reasonable, articulable suspicion Defendant might be armed or that her or another's safety might somehow be jeopardized. First, after Henderson turned on her blue lights, the car was slow to stop and, during the time it took the car to stop, Defendant threw a bag out of the window. While Defendant quibbles that a notation about Defendant's motion toward his waistband is not reflected in Henderson's written report, I **FIND** her testimony that he did so is credible. Even without the motion toward his waistband, however, it was reasonable for Henderson to be concerned that Defendant had something illegal on his person given his abandonment of the bag and his comment upon exiting the vehicle, neither of which is disputed. I **FIND** the credible facts establish Henderson properly handcuffed and then frisked Defendant based on the reasonable belief he was potentially armed and dangerous or could access a weapon if not restrained.

If an officer discovers nonthreatening contraband in plain view or by touch during a patdown, she may seize the contraband, providing it was immediately recognized. *See Dickerson*, 508 U.S. at 375 (plain view doctrine "has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search"); *United States v. Walker*, 181 F.3d 774, 778 (6th Cir. 1999) ("police may seize non-threatening contraband detected by touch during a protective pat-down search if the search stays within the bounds marked by *Terry*").

    **C.**    **Inevitable Discovery**

Defendant failed to address the inevitable discovery exception to the exclusionary rule, which is closely related to the independent source doctrine, both of which were argued by the government. Under the independent source doctrine, evidence that was in fact discovered lawfully, and not as a direct result of illegal activity, is admissible. *See United States v. Bowden*, 240 F. App'x. 56, 61,

10

(6th Cir. 2007). In contrast, the inevitable discovery doctrine permits the introduction of evidence that inevitably would have been discovered through lawful means, even if the search that actually led to the discovery of the evidence was unlawful. *See id.; United States v. Vite-Espinoza*, 342 F.3d 462, 469 (6th Cir. 2003). The inevitable discovery exception applies when the government establishes the disputed evidence inevitably would have been discovered and seized by the officers following routine procedures.

I **FIND** all of the evidence at issue would have been inevitably discovered pursuant to the reasonable detention of Defendant for investigation of the abandoned bag. *See United States v. Kennedy*, 61 F.3d 494, 499-500 (6th Cir. 1995) (inevitable discovery exception does not require active pursuit of a previously initiated independent investigation). Thus, even if the initial arrest of Defendant was premature and/or the frisk was flawed, the discovery of the evidence was inevitable based on Henderson's undisputed testimony she would investigate the bag tossed from the car window. Accordingly, I also **CONCLUDE** the inevitable discovery doctrine applies even if Defendant had been successful in demonstrating his Fourth Amendment rights were violated.[4]

### D. Abandonment

Defendant relies upon and repeats only upon his claim that he was the subject of an illegal arrest to counter the government's claim of abandonment of the crack cocaine. Defendant has not articulated a single valid basis for suppression of the abandoned bag of crack cocaine. The crack

---

[4] Given these conclusions, it is not necessary to separately address the money found in Defendant's pocket or the evidence resulting from the consensual search of the vehicle. While Defendant contends his statements during transport to the jail should be suppressed as "fruit of the poisonous tree," Defendant's argument for suppression of these statements are totally dependent on the outcome of his arrest/frisk argument. Thus, the statements need not be addressed separately or further. It is also not necessary to address the remaining argument raised by the government concerning the application of *Herring v. United States*, 555 U.S. 135 (2009).

11

cocaine was not found in a search incident to an arrest of any kind. Instead, Defendant threw the bag of cocaine crack onto a public street before the car stopped and he was seized. A defendant who abandons contraband prior to his seizure cannot challenge its admission even if the abandonment was prompted by unlawful police conduct. *California v. Hodari D.*, 499 U.S. 621, 623-24, 624 n.1 (1991); *United States v. Martin*, 399 F.3d 750, 752-53 (6th Cir. 2005) ("the fourth amendment does not apply to anything one may abandon . . ."). I **FIND** the bag and its crack contents were abandoned and lawfully recovered by the police, and Defendant has presented no legitimate argument for suppression of the crack cocaine. *See Hodari D.*, 499 U.S. at 629; *Martin*, 399 F.3d at 753.

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND** that Defendant's motion to suppress [Doc. 45] be **DENIED**.[5]

                                               s/ *Susan K. Lee*
                                               SUSAN K. LEE
                                               UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).